UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| RICKY R. C.[1], | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 2:18-CV-00444-MGG ) |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) ) |
| Defendant. | ) |

## OPINION AND ORDER

Plaintiff Ricky R. C. ("Mr. C") seeks judicial review of the Social Security Commissioner's decision denying his application for a period of disability and Supplemental Security Income ("SSI") under Title XVI, as allowed under 42 U.S.C. § 1383(c)(3). This Court may enter a ruling in this matter based on parties' consent pursuant to 28 U.S.C. § 636(c)(1); 42 U.S.C. § 1383(c)(3). [DE 14]. For the reasons below, the Court reverses and remands the decision of the Commissioner of the Social Security Administration.

**I.  OVERVIEW OF THE CASE**

Mr. C alleges disability based on degenerative disc disease of the spine, mild degeneration and carpal tunnel syndrome of the right upper extremity, insulin resistance syndrome, elevated homocysteine level, right knee degeneration, intermittent

---

[1] To protect privacy interests, and consistent with the recommendation of the Judicial Conference, the Court refers to the plaintiff by first name and last initial only.

obesity, and hypoxemia. Mr. C completed high school and worked as a painter and drywall applicator until 2006.

Mr. C's application for SSI on April 27, 2015, was denied initially and upon reconsideration. Following a video hearing, the Administrative Law Judge ("ALJ") issued a decision on October 5, 2017, affirming the Social Security Administration's ("SSA") denial of benefits. The ALJ found that Mr. C is unable to perform any past relevant work but that he has the residual functional capacity to perform medium work as defined by the regulations with some functional limitations [DE 10 at 22, 26]. Based upon the testimony of a vocational expert, the ALJ concluded that Mr. C can work as a dietary aide, laundry laborer, and gas and oil servicer. [*Id.* at 27–28]. As a result, the ALJ denied Mr. C's claims for benefits.

## II. DISABILITY STANDARD

In order to qualify for SSI, a claimant must be "disabled" under the Social Security Act ("Act"). A person is disabled under the Act if "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).

The Commissioner's five-step inquiry in evaluating claims for SSI under the Act includes determinations as to: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant's impairments are severe; (3) whether any of the claimant's impairments, alone or in combination, meet or equal one of the Listings in Appendix 1 to Subpart P of Part 404; (4) whether the claimant can perform his past

relevant work based upon his residual functional capacity ("RFC"); and (5) whether the claimant is capable of performing other work. 20 C.F.R. § 416.920. The claimant bears the burden of proof at every step except Step Five. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

## III.  STANDARD OF REVIEW

This Court has authority to review a disability decision by the Commissioner pursuant to 42 U.S.C. § 1383(c)(3). However, this Court's role in reviewing Social Security cases is limited. *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008). The Court must uphold the ALJ's decision so long as it is supported by substantial evidence. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014) (citing *Similia v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009)). Substantial evidence must be "more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). Substantial evidence is simply "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Summers v. Berryhill*, 864 F.3d 523, 526 (7th Cir. 2017); *Kepple v. Massanari*, 268 F.3d 513, 516 (7th Cir. 2001). The Court reviews the entire administrative record to determine whether substantial evidence exists, but it may not reconsider facts, reweigh the evidence, resolve conflicts of evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004).

The deference afforded to the ALJ's decision is lessened where the ALJ's findings contain errors of fact or logic or fail to apply the correct legal standard. *Schomas v. Colvin*, 732 F.3d 702, 709 (7th Cir. 2013). Furthermore, an ALJ's decision cannot stand if

it lacks evidentiary support or inadequately discusses the issues. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). At a minimum, an ALJ must articulate his analysis of the record to allow the reviewing court to trace the path of his reasoning and to be assured the ALJ has considered the important evidence in the record. *Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002). While the ALJ need not specifically address every piece of evidence in the record to present the requisite "logical bridge" from the evidence to his conclusions, the ALJ must at least provide a glimpse into the reasoning behind his analysis and the decision to deny benefits. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *see also Minnick v. Colvin*, 775 F.3d 929, 935 (7th Cir. 2015). However, if the ALJ fails in his obligation to build that logical bridge, the case must be remanded. *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996).

IV. **ANALYSIS**

    A. **Issues for Review**

Mr. C's challenges the ALJ's RFC determination. Specifically, Mr. C alleges that in crafting his RFC, the ALJ improperly weighed the medical opinion evidence, particularly the opinion of his treating physician, Nathanial Ross, M.D.; improperly discounted his subjective symptom testimony; and improperly devised a "middle ground" between the opinions of State Agency medical consultants and Dr. Ross. Thus, Mr. C argues that the RFC assigned to him by the ALJ is unsupported by substantial evidence and warrants remand.

4

B.    RFC Analysis

A claimant's RFC is the most activity in which he can engage in a work setting despite the physical and mental limitations that arise from his impairments and related symptoms. 20 C.F.R. § 416.945(a)(1); *see also Villano v. Astrue*, 556 F.3d 558, 561-62 (7th Cir. 2009); SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996). An "RFC is an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work- related physical and mental activities." SSR 96-8p, 1996 WL 374184, at *2. In crafting an RFC, the ALJ must consider "all of the relevant medical and other evidence" in the record, including objective medical evidence, medical opinion evidence, and subjective symptom testimony. 20 C.F.R. § 416.945(a)(3); *see also Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008).

In his decision, the ALJ determined that Mr. C has the RFC "to perform medium work as defined in 20 C.F.R. § 416.967(c), except that he can handle items frequently with the right dominant hand, can occasionally climb ramps and stairs, and can never climb ladders, ropes, or scaffolds[;] frequently balance, stoop, kneel, crouch, and crawl[; and] occasionally be exposed to vibration." [DE 10 at 22].

1.    Treating Physician Opinion Evidence

Included in Mr. C's medical record is as RFC Assessment form completed on April 12, 2017, by his treating physician, Dr. Ross. The ALJ clearly considered Dr. Ross's opinions found in the RFC Assessment as evidenced by his thorough recitation of his opinions that Mr. C could sit and stand/walk for less than fifteen minutes at a time;

5

would need to recline frequently during an eight-hour day; could sit for less than four hours and stand/walk for less than one hour of an eight-hour day; should avoid the lifting and carrying of any weight; could use his hands for sustained, repetitive action during an eight-hour day; could frequently reach and occasionally squat throughout an eight-hour day; and should avoid all bending. [*Compare* DE 10 at 26, *with* DE 10 at 344]. The ALJ then gave Dr. Ross's opinion little weight finding it inconsistent with evidence in the record, including

> the lack of severe findings on objective imaging, full range of motion and full strength of lumbar spine and lower extremities upon orthopedic evaluation, intact deep tendon reflexes, negative straight leg raising, and ability to ambulate without an assistive device [and] Dr. Ross' own examination findings, which do not note any musculoskeletal abnormalities.

[*Id.* at 26].

Mr. C argues that Dr. Ross's opinion should have been given greater weight because of his status as a treating physician and because Mr. C's medical records support Dr. Ross's opinion about his work limitations contrary to the ALJ's finding that the opinion is inconsistent with evidence in the record.

Generally, more weight is given to the opinions of treating sources because they are more familiar with a claimant's conditions and circumstances. *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). In fact, a treating physician's opinion is given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence" in the record. 20 C.F.R. § 416.927(c)(2). If an ALJ decides that a treating

6

physician's opinion is not sufficiently supported to be given controlling weight, he may discount the opinion, but must provide good reasons in his decision for the weight given. *Id.*; *see also Sharbeck v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004). If an ALJ does not give a treating physician's testimony controlling weight, SSA regulations require the ALJ to consider the length, nature, and extent of the treatment relationship, frequency of examination, the physician's specialty, the types of tests performed, and the consistency and supportability of the physician's opinion. 20 C.F.R. § 416.927(c).

### a. Controlling Weight and Section 927(c) Factors

Mr. C acknowledges that the ALJ was within his authority to not give Dr. Ross's treating source opinion controlling weight but criticizes the ALJ for failing to explicitly discuss the Section 927 factors in discounting the opinion. Mr. C contends that many of the Section 927 considerations favor crediting Dr. Ross's opinion, namely that Dr. Ross treated Mr. C over the course of two years for consistent complaints of assorted pain and numbness issues. Mr. C also argues that the ALJ's failure to explicitly discuss the Section 927 factors makes it unclear whether the ALJ actually considered the factors in determining how to weigh Dr. Ross's opinion. Mr. C's arguments, however, are misplaced.

First, an ALJ is not required to automatically and uncritically rely on a treating source's opinion. *Reynolds v. Bowen*, 844 F.2d 451, 455 (7th Cir. 1988) ("[W]hile the treating physician's opinion is important, it is not the final word on a claimant's disability."). Moreover, this Court cannot, and will not, reweigh Dr. Ross's treatment

7

records to determine whether they are consistent with the limitations Dr. Ross opined in the RFC Assessment he completed as Mr. C seems to ask. *See Young*, 362 F.3d at 1001.

Second, the ALJ's opinion demonstrates that he considered the Section 927 factors despite Mr. C's argument to the contrary. The ALJ clearly understood that Dr. Ross had examined Mr. C as evidenced by his recitation of Dr. Ross's treatment records from March 2015 through 2016. [*See* DE 10 at 23–24]. The ALJ's detailed recitation of Dr. Ross's treatment records also shows that he recognized how long Dr. Ross had treated Mr. C as well as the nature and extent of that treatment. Moreover, the ALJ directly addressed the supportability and consistency factors finding Dr. Ross's opinion inconsistent with the other evidence in the record, including his own findings.

Admittedly, the ALJ did not identify Dr. Ross's specialty of family medicine in his decision. Any omission here, however, is harmless error because even if Dr. Ross's family medicine specialty were considered, he is not an orthopedic, neurological, or pain specialist whose expertise would have justified greater weight for his opinions on Mr. C's limitations arising from his orthopedic, neurological, or pain impairments. 20 C.F.R. § 416.927(c)(5) ("[M]ore weight [is given] to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist.").

### b. Inconsistency with the Record

First, Mr. C argues that the ALJ's determination that Dr. Ross's opinion was inconsistent with the other medical evidence in the record was based on "unfounded reasoning." [DE 15 at 6]. Specifically, Mr. C directs the Court's attention to diagnostic

8

testing results in the record that allegedly make Dr. Ross's opinion consistent with the record as a whole. Yet, the ALJ noted the same July 2015 right hand x-ray, July 2015 nerve conduction study, September 2016 right knee x-ray, and February 2017 lumbar x-ray that Mr. C asks the Court to consider. [*See* DE 10 at 24–25].

Therefore, the ALJ clearly considered these diagnostic studies, which arguably show degenerative changes. Additionally, the ALJ's decision references competing medical findings including those from a consultative examination in July 2015 and an examination regarding his back pain in January 2017. As the ALJ correctly cites, those examining physicians indicated that Mr. C had full range of motion and full strength of the lumbar spine and lower extremities, intact deep tendon reflexes, negative straight leg raise testing, and the ability to ambulate without an assistive device. As a result, the ALJ created the necessary logical bridge to support his conclusion. *See O'Connor-Spinner v. Astrue*, 627 F.3d at 618.

Second, Mr. C argues that the ALJ erred by finding Dr. Ross's opinion inconsistent with his own examination findings. The ALJ reasoned that Dr. Ross's examination findings do not note any musculoskeletal abnormalities. [DE 10 at 26]. Mr. C again points to competing medical evidence that the ALJ specifically referenced in his recitation of medical evidence. Mr. C also suggests that the ALJ should have sought clarification of the purported inconsistency from Dr. Ross.

There is no doubt that the ALJ must ensure that the record is fully and fairly developed. *Cannon v. Harris*, 651 F.2d 513, 519 (7th Cir. 1981). However, Mr. C has not shown that the ALJ required clarification especially given the competing evidence the

9

ALJ considered. The ALJ considered all the evidence and decided that Dr. Ross's opinion was not supported by that evidence—a decision every ALJ is entitled to make. *See Simila v. Astrue*, 573 F.3d 503, 516–17 (7th Cir. 2009); *see also Sharbeck*, 390 F.3d at 503 ("An ALJ may discount a treating physician's medical opinion if it is inconsistent with the opinion of a consulting physician . . . .").

Having articulated a logical bridge between the record and his decision to discount Dr. Ross's treating opinion, including proper consideration of the Section 927(c) factors, the ALJ supported his treating source analysis with substantial evidence.

### 2. Subjective Symptom Analysis

Once an ALJ decides that the claimant has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms, the ALJ must evaluate the intensity and persistence of the claimant's symptoms to determine the extent to which he is limited in performing work-related activities. 20 C.F.R. § 416.929(b)–(c). In doing so, the ALJ must consider objective medical evidence and "other evidence," which includes statements made by the individual, his daily activities, medications, and other factors concerning functional limitations. *Id.* § 416.929(c)(2)–(3). In determining the extent to which the claimant's symptoms affect his capacity to perform basic work activities, the ALJ must consider whether the subjective symptoms "can reasonably be accepted as consistent with the objective medial evidence and other evidence." *Id.* § 404.1529(c)(4).

The ALJ's findings as to the claimant's allegations of subjective symptoms and credibility are treated deferentially and will only be overturned if "patently wrong" or

"lack[ing] explanation or support." *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017) (citing *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014)). "A credibility determination lacks support when it relies on inferences that are not logically based on specific findings and evidence." *Id.*

Here, Mr. C challenges the ALJ's conclusion that his "statements concerning the intensity, persistence, and limiting effects of his physical symptoms are not entirely consistent with the medical evidence and other evidence in the record." [DE 10 at 25]. In support of his conclusion, the ALJ referenced Mr. C's allegedly "conservative" treatment, some alleged inconsistencies in the objective medical evidence regarding Mr. C's pain, and his independent performance of personal hygiene and grooming tasks as well as driving.

As to Mr. C's treatment, the ALJ notes that Mr. C did not pursue surgeries or nonemergent pain injections to treat his pain. Additionally, the ALJ indicates that the record lacks evidence of any prescription for physical therapy, a cane, or wrist and knee braces, as Mr. C claims. What the ALJ does not report, however, is that Mr. C did not have health insurance until very shortly before his oral hearing in May of 2017—a point made by Mr. C's attorney at the hearing. [DE 10 at 38]. The ALJ cannot discount a claimant's allegations based on a lack or sparseness of treatment when the claimant's options are limited by lack of insurance. *Pierce v. Colvin*, 739 F.3d 1046, 1050 (7th Cir. 2014). Therefore, the ALJ's "conservative treatment" rationale does not constitute substantial evidence to support the ALJ's decision to discount Mr. C's subjective symptom allegations.

To support his decision to discount Mr. C's subjective symptoms allegations, the ALJ also cited what appears to be conflicting medical evidence regarding his pain. The ALJ referenced treatment notes regarding Mr. C's routine examinations citing indications of spinal tenderness tempered by reports that Mr. C was "in no apparent distress [and retained] full range of motion in the spine, full strength of the extremities, and negative straight leg raise testing." [DE 10 at 25]. The ALJ further noted that objective testing in the record did not document abnormal findings of a severe nature. [*Id.*]. Yet Mr. C directs the Court's attention to medical records from Dr. J. Smejkal, who conducted a consultative examination of Mr. C on July 6, 2015; multiple visits to Dr. Ross, Mr. C's primary care physician; and an emergency room visit in December 2016 as evidence of the back pain, right knee pain, and gait disturbances causing Mr. C's alleged symptoms. Additionally, Mr. C references the same September 2016 knee x-ray and his February 2017 lumbar x-ray discussed above.

The ALJ's decision mentions all of this evidence. As such, Mr. C's argument that the ALJ failed to consider evidence of his pain is misplaced. Mr. C also suggests that the ALJ improperly weighed the quantity of objective medical evidence of pain against Mr. C's own testimony. Indeed, the ALJ must not disregard a claimant's statements about the intensity, persistence, and limited effects of his symptoms based soled on objective medical evidence. SSR 16-3p, 2017 WL 5180304, at *3 (Oct. 25, 2017); *see also Hall v. Colvin*, 778 F.3d 688, 691 (7th Cir. 2015) ("The administrative law judge's most serious error . . . is her belief that complaint of pain, to be credible, must be confirmed by diagnostic tests."); *Pierce*, 739 F.3d at 1049–50 ("An ALJ may not discount a claimant's

credibility just because her claims of pain are unsupported by significant physical and diagnostic examination results."). The ALJ here did not. In fact, the ALJ cited to Mr. C's reported activities of daily living as well as his use of prescription pain medication, just as Mr. C argues he should have.

Mr. C's argument that the ALJ overemphasized Mr. C's activities of daily living in assessing the effects of his subjective symptoms is also misplaced. The Seventh Circuit has warned that ALJs often improperly conflate activities of daily living with ability to perform activities associated with full-time work. *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012). However, an ALJ must consider a claimant's daily activities when assessing subjective symptom allegations according to 20 C.F.R. § 416.929(c)(3)(i) so long as he does not place "undue weight" on a claimant's household activities in assessing the claimant's ability to perform a job outside the home. *Craft*, 539 F.3d at 680. As already shown, the ALJ balanced his consideration of Mr. C's daily activities with attention to objective medical evidence in the record—the exact evidence Mr. C urges this Court to review.

Nevertheless, the ALJ erred by using Mr. C's "conservative treatment regimen" as a rationale for discounting his allegations regarding his subjective symptoms without taking into account Mr. C.'s lack of insurance. As such, the ALJ's subjective symptoms analysis is not supported by substantial evidence. Any error, however—standing alone—does not automatically justify remand. Social Security appeals need not be remanded to an ALJ for further explanation if the Court "can predict with great confidence that the result on remand would be the same." *Schomas*, 732 F.3d at 707

(collecting cases). Mr. C. has not demonstrated that consideration of his lack of insurance would lead the ALJ to reach a different conclusion about the intensity, persistence, and limited effects of Mr. C's symptoms. And given the ALJ's appropriate balanced consideration of Mr. C's daily activities and the objective medical evidence in the record, the Court is not confident that this error alone would change the outcome of Mr. C's RFC or disability determination on remand. With that said, the Court turns to Mr. C's final argument that the ALJ failed to set forth a supported rationale for the RFC.

### 3. Rationale Underpinning RFC

As noted above, the ALJ found that Mr. C was capable of performing medium work[2] with some functional limitations reflecting specific lift, carry, and mobility findings. In reaching this conclusion, the ALJ states that he relied on the "totality of the medical opinion evidence, the objective medical findings, and other medical evidence found in the record." [DE 10 at 26].

The ALJ's RFC analysis included a thorough recitation of the objective medical evidence and Mr. C's subjective symptom allegations. The ALJ summarized in detail treatment records from Mr. C's primary care physician, Dr. Ross, who saw and treated him between 2015 and 2017. [DE 10 at 23–24, 26]. The ALJ also reported Dr. Ross's opinions reflected in the RFC Assessment questionnaire he completed on April 12, 2017, regarding Mr. C's limitations. [*Id*. at 26]. Additionally, the ALJ discussed records from Mr. C's consultative examination by Dr. Smejkal on July 6, 2015 [*Id*. at 23–24]; opinions

---

[2] Medium work involves lifting no more than 50 pounds at a time with frequent lifting and carrying of objects weighing up to 25 pounds, as well as "a good deal of walking and standing." 20 C.F.R. § 416.967(b)–(c).

14

from State Agency consultants J.D. Corcoran, M.D., and Shayne Small, M.D., drafted in July and September 2015 respectively. [*Id.* at 25–26]; records from Mr. C's emergency room visit for back pain in December 2016 [*Id.* at 24]; records from Mr. C's evaluation for back pain by Dr. Ashish Patel on January 5, 2017 [*Id.* at 24–25]; and medical imaging results from 2015 and 2017 [*Id.*]. The ALJ then gave little weight to the three medical opinions in the record from Drs. Ross, Corcoran, and Small. Mr. C argues that the ALJ failed to underpin his determination that Mr. C retains the functional capacity to perform medium work with a supported rationale because it was based upon an improperly devised "middle ground" between medical evidence—especially the medical opinion evidence—in the record.

In determining a claimant's RFC, an ALJ evaluates the claimant's age and his ability to lift weight, sit, stand, walk, push, pull, and any other factors that would be helpful in gauging his ability to perform sedentary, light, medium, heavy, or very heavy work. 20 C.F.R. § 416.967. An ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe, and may not dismiss evidence contrary to the determination. *Villano*, 556 F.3d at 563. An ALJ determining a claimant's RFC must consider the entire record, including all relevant medical and nonmedical evidence. 20 C.F.R. § 416.945(a). When the record contains conflicting medical evidence, the ALJ has the responsibility of resolving the conflict. *See Diaz v. Charter*, 55 F.3d 300, 306 n.2 (7th Cir. 1995). However, an ALJ may not "play doctor" by substituting his own judgment for a physician's opinion without relying on other medical evidence in the record. *Clifford*, 227 F.3d at 870. In essence, Mr. C

contends that the ALJ improperly "played doctor" by making his own independent medical findings, rather than basing his determination on medical evidence in the record. *See Rohan v. Charter*, 98 F.3d 966, 970 (7th Cir. 1996). Mr. C's point is well taken.

The ALJ disagreed with all the medical opinions in the record as evidenced by the little weight he afforded each one. State Agency consultants Corcoran and Small both opined that evidence in Mr. C's record did not support the existence of any severe impairments. Yet, the ALJ discounted these opinions because they did not review a complete record from which the ALJ determined that severe impairments did exist. On the other extreme, Dr. Ross opined that Mr. C was incapable of sustaining full time work at the sedentary level. The ALJ discounted this opinion as inconsistent with other evidence in the record, including Dr. Ross's own examination findings.

However, none of the evidence in the record which the ALJ purports to rely on makes any mention of Mr. C's capability to perform medium work, nor any mention of specific lift/carry and push/pull findings. Furthermore, the ALJ does not explain how he arrived at his RFC determination based upon the medical evidence in the record or how the medical evidence in the record supports his conclusion. The ALJ's thorough recitation of medical evidence is undermined by his bare conclusion, unsupported by reasoning, as to Mr. C's RFC. While there may be evidence in the record that supports the ALJ's conclusion, this Court is left to guess as to the ALJ's path of reasoning and thus cannot be assured that the ALJ has properly considered the evidence. Therefore, because the ALJ has failed to build the requisite logical bridge between the record and

his conclusion, this Court finds that his RFC analysis is not supported by substantial evidence such that Mr. C's case must be remanded.

V. CONCLUSION

For the reasons stated above, the ALJ's RFC determination is not supported by substantial evidence and must be remanded to address the shortcomings in the ALJ's analysis. Accordingly, Mr. C's appeal of the Social Security Administration's decision denying his application for Supplemental Security Income is **GRANTED**. The Commissioner's decision is **REVERSED,** and the Court now **REMANDS** this case to the Commissioner for further proceedings consistent with this opinion. The Clerk is instructed to enter judgment in favor of Mr. C.

**SO ORDERED** this 4th day of March 2020.

s/Michael G. Gotsch, Sr.<br>
Michael G. Gotsch, Sr.<br>
United States Magistrate Judge